# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  | : |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | **Complaint for Violations of the** |
| **v.** | : | **Federal Securities Laws** |
| | : | |
| **BRENDA A. SMITH, BROAD REACH** | : | **Jury Trial Demanded** |
| **CAPITAL, LP, BROAD REACH** | : | |
| **PARTNERS, LLC, and BRISTOL** | : | |
| **ADVISORS, LLC,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

Plaintiff Securities and Exchange Commission (the "Commission"), One Penn Center, 1617 JFK Boulevard, Suite 520, Philadelphia, Pennsylvania 19103, alleges as follows against the following defendants, whose names and last known addresses are set forth below:

a. Brenda A. Smith
   222 West Rittenhouse Square
   Penthouse 3
   Philadelphia, PA 19103

b. Broad Reach Capital, LP
   200 Four Falls, Suite 211
   1001 Conshohocken State Road
   West Conshohocken, PA 19428

    c.  Broad Reach Partners, LLC
        200 Four Falls, Suite 211
        1001 Conshohocken State Road
        West Conshohocken, PA 19428

    d.  Bristol Advisors, LLC
        200 Four Falls, Suite 211
        1001 Conshohocken State Road
        West Conshohocken, PA 19428

## SUMMARY

1.    This case involves an investment advisory fraud in which Brenda A. Smith and the other Defendants solicited over $100 million from investors for purported investment in sophisticated securities trading strategies. However, Smith took the vast majority of these funds for unrelated companies, to pay back other investors, and for personal use. And, in 2019, confronted with at least one investor trying to redeem its investment, Smith created a fictitious valuation of assets backed by false claims that she held billions of dollars in assets through a company she owned.

2.    From at least February 2016 through the present, Smith, defendant Broad Reach Capital, LP ("Broad Reach Fund" or the "Fund"), defendant Broad Reach Partners, LLC ("Partners"), and defendant Bristol Advisors, LLC ("Bristol")

(collectively, without Smith, the "Entity Defendants"), engaged in this fraud. Smith dominated and controlled the Entity Defendants such that they were essentially her alter egos.

3. Through the Entity Defendants, Smith offered limited partnership interests in the Fund to investors beginning in early 2016. Since the Fund's inception, Smith raised approximately $105 million from at least 40 investors, and investors are still owed more than $63 million in principal.

4. To solicit and retain investors, Defendants represented that the Fund employed several profitable, sophisticated trading strategies involving highly liquid securities, including those that it was uniquely positioned to pursue because of its access to the Philadelphia Stock Exchange trading floor ("Trading Strategies"). In reality, only a small fraction of investor money was actually used for these strategies.

5. The vast majority of the funds were moved through the bank accounts of entities Smith controls and ultimately used to, among other things, make her own personal investments and to repay other investors. To lull existing investors and solicit additional investments, Defendants provided monthly account statements reflecting high returns and "tear sheets" touting the Fund's overall

3

claimed 30%+ yearly return and that the Fund had never had a losing month. These and other performance statements were false.

6.      In recent months, several investors have tried—in vain—to redeem. In July 2019, in response to investors' concerns, Defendants distributed a document valuing the Fund's assets at over $180 million ("Asset List").  To support this valuation, Smith claimed that she owned a $2.5 billion bond issued by a publicly traded financial institution (the "Bond") and had transferred $100 million of the Bond to the Fund.  She even provided purported brokerage statements reflecting the supposed $2.5 billion holding.  But the documents are fake, and thus, more than $100 million of claimed holdings of the Fund are an obvious fiction.  The vast majority of investors' money is gone from the Fund.

7.      The Defendants engaged in a fraudulent scheme and made material misrepresentations and omissions to investors and prospective investors.  Smith and Bristol also abused their position and breached their fiduciary duties as investment advisers by making material misrepresentations and omissions and failing to act in the best interest of the Fund.

8.      By engaging in the conduct described in this Complaint, Defendants violated, directly or indirectly, and unless enjoined will continue to violate, Section

4

17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section

10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §

78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  In addition, because

Smith and Bristol are investment advisers, by engaging in the conduct described in

this Complaint, they also violated, directly or indirectly, and unless enjoined will

continue to violate, Sections 206(1), (2), and (4) of the Investment Advisers Act of

1940 ("Advisers Act") [15 U.S.C. § 80b-6] and Rule 206(4)-8 thereunder [17

C.F.R. § 275.206(4)-8].

## JURISDICTION AND VENUE

9.     The Commission brings this action pursuant to Sections 20(b) and

20(d) of the Securities Act [15 U.S.C. §§ 77t(b), (d)], Sections 21(d) and 21(e) of

the Exchange Act [15 U.S.C. §§ 78u(d), (e)], and Sections 209(d) and 209(e) of the

Advisers Act [15 U.S.C. §§ 80b-9(d), (e)] to enjoin such acts, practices, and

courses of business, and to obtain disgorgement, prejudgment interest, civil money

penalties, and such other and further relief the Court may deem just and appropriate.

10.    This Court has jurisdiction over this action pursuant to Sections 20(b),

20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), (d), and 77v(a)];

Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and

Case 2:19-cv-17213-MCA-ESK Document 1 Filed 05/29/19 Page 6 of 33 PageID: 6

78aa]; and Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), (e), 80b-14]. Defendants, directly or indirectly, made use of the mails, or the means and instrumentalities of interstate commerce, or the facility of national security exchanges, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

11. Venue in this district is proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1391(b), because certain acts, practices, transactions, and courses of business constituting violations of the federal securities laws occurred within the District of New Jersey. In connection with the fraud, Defendants sent, and/or caused to be sent, wire transmissions through the Fedwire Funds Service, which involved electronic communications between Federal Reserve facilities in New Jersey and Texas.

## THE DEFENDANTS

12. Brenda A. Smith, age 60, is an individual who, upon information and belief, resides in Philadelphia, Pennsylvania. Smith owns and/or controls the Entity Defendants and many other entities. Smith operated all of the Entity Defendants out of the same office space in West Conshohocken, Pennsylvania. During the relevant period, Smith owned, controlled, and/or exercised dominion

over the Entity Defendants making them essentially her alter egos. Until recently, Smith owned CV Brokerage, Inc., a registered broker-dealer, and held Series 7, 24, 27, 53, 63, 79, and 99 licenses. On July 2, 2019, the Financial Industry Regulatory Authority ("FINRA") accepted a letter of Acceptance, Waiver, and Consent from Smith by which she agreed to be barred by FINRA in light of her failure to respond to a written request for documents and information pursuant to FINRA Rule 8210.

13. Broad Reach Capital, LP (also referred to as "Broad Reach Fund" or "Fund") is a Delaware limited partnership established by Smith in February 2016 and operates as a purported hedge fund. The Fund's principal place of business is in West Conshohocken, Pennsylvania.

14. Broad Reach Partners, LLC (also referred to as "Partners") is a Delaware limited company with its principal place of business in West Conshohocken, Pennsylvania. It serves as the general partner for the Fund. Partners has no employees other than Smith and conducts no business other than serving as the Fund's general partner. Partners passed much of the money invested in the Fund through its bank account to entities or accounts controlled by Smith.

15. Bristol Advisors, LLC (also referred to as "Bristol") is a Delaware limited liability company with a principal place of business in West

Conshohocken, Pennsylvania. It is a registered investment advisor that purports to provide investment advisory services to its sole client, the Fund. Smith is the sole owner of Bristol and the person who makes all advisory decisions for Bristol. Bristol has no business operations other than advising the Fund.

## RELEVANT PERSONS AND ENTITIES

16. CV International Investments, Ltd., is a purported UK company with its principal place of business in London, UK. Smith formed CV International and controls it.

17. "Investor 1" is an individual residing in Florida. Investor 1 invested his own assets with the Fund.

18. "Investor 2" is an individual residing in Puerto Rico. Investor 2 invested assets of investment vehicles he controlled with the Fund. Later, he combined and merged these investments into an investment made by Investor 3.

19. "Investor 3" is a limited partnership with its principal place of business in Montreal, Canada.

## FACTS

### A. Smith Controlled the Entity Defendants and Misused Investor Funds

20.     Smith dominated and controlled each of the Entity Defendants—the Fund, Partners, and Bristol—such that they were essentially her alter-egos.  She controlled their brokerage and bank accounts, and every other aspect of the businesses.  In addition, during the period February 2016 to the present, Smith also controlled or had signatory authority on the brokerage and/or bank accounts of at least 35 additional entities.

21.     Defendants offered limited partnership interests in the Fund to investors.  Defendants raised approximately $105 million from at least 40 investors since the Fund's inception.

22.     Defendants represented to investors and prospective investors that the Fund would invest their assets in the Trading Strategies, which involved highly liquid securities and which Defendants claimed the Fund was uniquely positioned to pursue.

23.     However, contrary to those representations, investors' money rarely ended up in the brokerage accounts participating in the Trading Strategies that

Defendants had touted and promised. Defendants used only a small fraction of the money received from investors to engage in the Trading Strategies.

24. Instead, Defendants funneled the bulk of investor funds through a web of entities Smith controlled. Ultimately, Smith used the funds to make her own apparent investments wholly unrelated to the Trading Strategies. There is no evidence that the Fund owns any of these other investments.

25. Unbeknownst to investors, Defendants also used some of the money they had invested to pay other investors seeking to redeem. Further, since the Fund's inception, Smith used over $2 million of the Fund's assets (filtered through three of her entities) to pay American Express bills. None of this capital was engaged in the claimed profitable Trading Strategies.

26. Indeed, although investors contributed approximately $105 million to the Fund, the high point of all brokerage and bank accounts in the name of the Fund and its purported affiliates was no more than $31.8 million in December 2016.

27. Since December 2016, the total assets within bank and brokerage accounts of the Broad Reach Fund have steadily declined, even as tens of millions of new investment money poured into the Fund.

10

## B. Defendants Made Material Misrepresentations and Omissions to Induce Investors to Invest

### 1. The Fund's Written Materials Marketed the Trading Strategies to Potential Investors

28.     According to the Fund's Private Placement Memoranda ("PPM"), the Fund's investment objective and strategy is to "invest its account with managers that represent a diverse set of assets" that would include "equities, bonds, options, commodities, foreign exchange, and energy."

29.     In other documents Defendants provided to investors, created by Smith or at her direction, Defendants presented an even narrower focus, stating that the Fund would invest in the Trading Strategies.  For example, the Fund's "Investor Presentation," dated February 2018, made clear that the Fund's strategy was an equities trading strategy designed to "[i]dentify, utilize, monitor and manage the managers who execute risk strategies through proven mathematical models to generate positive uncorrelated returns."  A series of "[c]ompetitive advantages" listed in the presentation exclusively referred to securities trading. The presentation also provided detailed charts relating to the three primary securities trading strategies:  Dividend Capture, Short-Term Opportunistic Trading, and VIX Convergence.

11

30.    In or about October 2016, Defendants provided a "tear sheet" (a single-page document touting the returns of the Fund's Trading Strategies) to certain current and prospective investors, including Investor 2.  This tear sheet purported to reflect the Fund's historical performance and mentioned no investments other than the Trading Strategies.

31.    The tear sheet also posed the rhetorical question "Why Broad Reach," and went on to tout its "Distinctly Different Trading Strategies," "direct access to floor traders," and "specialized" trades.

32.    Similarly, Defendants provided a March 31, 2018 "tear sheet" to certain current and prospective investors (including Investor 2), purporting to reflect the Fund's historical performance.  Again, the tear sheet mentioned no investments other than the Trading Strategies, and touted an "efficient execution platform" and "high level of liquidity," noting that "[t]he current portfolio of strategies include Dividend Capture, VIX Convergence, Volatility Skew, S&P Premium Capture, Opportunities and Intraday Trading."  Each of these is a securities trading strategy.

33.    Both the Investor Presentation and the tear sheets also boasted of the Fund's steady, positive returns.  They included a chart reflecting that each month

since January 2015 (which predates the origin of the Fund itself by approximately

a year) the Fund had positive returns, with the 2018 documents claiming annual

returns of over 35% in 2016 and 33% in 2017. The presentation and 2018 tear

sheet also asserted that the Fund had a positive return of 6.07% in the first three

months of 2018, including a gain of 1.76% for February 2018.

34.     In reality, the limited funds invested in the Trading Strategies declined

by over 50% in February 2018. And, even when the Trading Strategies were

profitable, there was simply not enough money devoted to them to generate the

claimed positive returns for the overall Fund.

### 2. Defendants Defrauded Investors 1, 2, and 3

35.     The specific experiences of three of Defendants' largest investors are

illustrative of the fraud.

#### a. Investor 1

36.     Investor 1 invested approximately $9.5 million in the Fund with the

understanding, based on representations by Smith and written documentation

concerning the Fund she provided, that his capital would be allocated to the

Trading Strategies.

13

37.     Investor 1 confirmed this understanding in a December 1, 2016 side letter agreement, a document permitted by the Fund's Private Placement Memorandum.  That side letter specifically stated that Investor 1's investment would be allocated to the Trading Strategies and required Defendants to provide Investor 1 with written notice if any material changes in the Trading Strategies were made.  A list of the referenced Trading Strategies was attached to the side letter, which Smith signed on behalf of the Fund.

38.     Despite the side letter and other representations, Defendants only used a small portion of Investor 1's funds in the Trading Strategies.

39.     For example, between December 19, 2016 and January 23, 2017, Defendants received over $8.9 million in new funds from investors into the Fund's bank account (as well as a $1 million transfer from a brokerage account), of which $5.6 million was an investment made by Investor 1.  However, only $550,000 of the $9.9 million was transferred to Fund brokerage accounts for trading.

40.     Instead, Defendants transferred over $8.7 million of that investor capital to other entities that Smith controlled.  Smith appears to have used this money for, among other things, a mining and mineral company and a restaurant, entities with no relation to the Trading Strategies.

14

41.     There is no evidence that these entities were owned by the Fund, and bank records do not reflect that they paid any returns to the Fund.  Moreover, these entities are not even identified as "investments," either in the Fund's 2016 Financial Statements disseminated to investors or on the Asset List distributed to investors in July 2019.  Smith simply took these funds for her own personal investment or use.

### b.  Investor 2

42.     Investor 2 understood from the Defendants that his investment would be used exclusively to trade securities using the Trading Strategies.  Defendants sent Investor 2 documents, touting the uniqueness of the Trading Strategies and their historically high returns, to induce investment.

43.      During a September 2016 meeting with Investor 2, Smith created a handwritten document for Investor 2 representing that the Fund derived all revenue and returns from the Trading Strategies.

44.     Investor 2 also received the false March 31, 2018 tear sheet with the fabricated February 2018 returns.

45.     Investor 2 invested over $26.7 million with the Fund, in a series of payments over time, on behalf of certain investment funds he managed, including his family partnership.

46.     Defendants routinely used capital obtained from Investor 2 for purposes other than the Trading Strategies.  For instance, on July 5, 2017, Investor 2 wired $3 million to the Fund's bank account.  Within three days, over $2.2 million of that capital was transferred to other entities controlled by Smith, including $1.8 million to an entity that Smith utilized for her own investments.

47.     In May 2018, Investor 2 wired $5.43 million to the Fund's bank account, again with the understanding that this capital would be used in the Trading Strategies.  However, none of this money was transferred to a Fund brokerage account.  Instead, within weeks, Defendants transferred roughly half of Investor 2's funds to other entities controlled by Smith, and used the other half to fund redemptions by other investors in the Fund.

### c.  Investor 3

48.     Defendants similarly made oral and written misrepresentations to Investor 3 concerning the use of his investment funds.  To signify that its investment would involve the "dividend capture" trading strategy of the Fund,

16

Investor 3 went so far as to name the entity making the investment the "Dividend Capture" fund.

49.    As with Investor 1 and Investor 2, Defendants used only a small fraction of Investor 3's funds in any kind of securities trading.  Investor 3 first invested $2.285 million in late December 2018, transferring the funds to the Fund's bank account at a time when the balance in the account was less than $1,000.

50.    By January 15, 2019, Defendants had exhausted the more than $2 million invested by Investor 3, but had transferred only $31,875 to brokerage accounts.  Instead, Defendants caused the transfer of approximately $1.36 million to other entities Smith controlled and wired $1 million to a real estate firm, each with no relation to the Trading Strategies.

51.    On January 29, 2019, Investor 3 invested another $2 million in the Fund, wiring the money to the Fund's bank account at a time when the balance in the account was less than $75.  That same day, Defendants wired $2 million to another investor in the Fund with an outstanding redemption request.

52.    Two days later, on January 31, 2019, Investor 3 wired an additional $225,000 to the Fund's bank account.  That same day, Defendants wired the funds

17

obtained from Investor 3 to the aforementioned Fund investor to fund a redemption request. None of Investor 3's January 2019 investments were deposited into a brokerage account for the purpose of conducting the Trading Strategies.

53. Smith also misled Investor 3 regarding the Fund's historical performance during Investor 3's due diligence process. During an August 30, 2018 phone call, Smith misrepresented to Investor 3 that the Fund's Trading Strategy relating to volatility had produced a substantial profit in February 2018. To the contrary, the Fund's brokerage accounts suffered massive losses in February 2018, with the primary Broad Reach account losing over 50% of its value, dropping from approximately $17.7 million to approximately $8.8 million by the end of the month.

## C. Defendants Have Continued to Make Material Misrepresentations and Omissions About the Fund's Assets

54. In approximately February 2019, Investor 2 transferred his investment in the Fund to Investor 3. After this transfer, the Fund's books and records reflected that the total value of Investor 3's holdings was approximately $46.6 million. This included all principal and purported investment gains for Investors 2 and 3.

18

55.     Shortly therafter, Defendants took issue with the transfer.  As a result of this dispute, in March 2019, Investor 3 decided to fully redeem the combined $46.6 million investment in the Fund.  Defendants accepted Investor 3's redemption request and stated that the funds would be wired on May 15, 2019.

56.     The Fund did not redeem Investor 3 on May 15, however, and Smith has made various excuses as to why the Fund has not fulfilled the redemption request.  Finally, on May 31, 2019, Defendants, still having failed to return Investor 3's investment, instead provided Investor 3 with what Smith claimed was the Fund's "proof of funds" to assure Investor 3 that his capital was intact.

57.     This "proof of funds" was a purported board resolution by CV International Investments Limited ("CV International"), another entity owned by Smith and unconnected to the Fund.  The resolution stated that CV International had transferred $100 million worth of a bond to the Fund, effective December 31, 2017.  Smith signed the document as a Director of CV International.

58.     Later that same day, Defendants emailed a purported bank statement to Investor 3 indicating that CV International owned $2.5 billion of the Bond referred to in the corporate resolution.  Defendants sent these documents to support the assertion that CV International—the supposed owner of the $2.5 billion

19

Bond—had transferred $100 million worth of the Bond to the Fund in December 2017, and thus, the Fund had sufficient capital to satisfy redemption requests.

59.     Defendants also provided the Asset List—a one-page document listing the fund's purported assets as of June 30, 2019—to Investor 3.  According to the Asset List, as of June 30, 2019, the Fund's assets were valued at over $180 million, with the largest asset being $129.56 million of the Bond.

60.     Defendants listed the value of the Fund's brokerage account at only approximately $2.6 million, but even this limited amount was false.  The actual June 2019 balance of the Fund's brokerage account was approximately $652,000.

61.     Soon after, apparently spurred by other investors seeking redemptions, Defendants provided the Asset List to other investors in the Fund.

62.     Smith's continuing claim that her entity, CV International, owns (or recently owned) $2.5 billion worth of the Bond is false and the brokerage statement indicating CV International's ownership is a fiction.

63.     Public records indicate that the entire issuance of the Bond was valued at $2.5 billion.  The real Bond is a liquid security that is actively traded in United States and international bond markets.  Public records show that there are multiple, large institutional holders of the Bond.  Conversely, there is no public record that

indicates that CV International, Defendants, or any other known entity controlled by Smith owns any of the Bond, let alone the entire issuance.  Smith's claims that $100 million of the Bond's value (now inexplicably valued at over $129 million) was transferred to the Fund and represents 71% of the Fund's assets, are simply false.

64.     The majority of the Fund's other listed assets on the Asset List are also dubious.  For instance, the Fund's second largest purported asset is $20.25 million in "securitized cryptocurrency."  Attempting to substantiate this claim, Defendants provided Investor 3 with only a two-page, unintelligible document entitled "Wallet," which shows a few lines of text with dollar figures.  Fund bank records do not reflect the purchase of this purported asset.

65.     Defendants are covering up a massive shortcoming in the Fund caused by the misuse of investor funds and losses generated by the Trading Strategies. Putting aside the outlandish and inaccurate claims of 30% plus yearly gains, of the approximately $105 million invested in the Fund, based on amounts returned to investors, almost always from other investors' money, the Fund still owes investors more than $63 million in principal.

21

66.     There is no evidence that assets sufficient to satisfy that obligation are currently held by the Fund or any other affiliated entity.

**D. Defendants Violated The Anti-Fraud Provisions of the Federal Securities Laws**

67.     During the relevant period, Smith operated, controlled, and dominated the Entity Defendants such that they were essentially her alter egos.

68.     The limited partnership interests in the Fund sold by Defendants are investment contracts, and therefore securities.  Likewise, Defendants' fraudulent scheme concerned investing in securities.

69.     All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material.  There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information regarding how their money would be invested, how the supposed investments performed, the value of those investments, and the ability to repay those investments important, and/or that disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

70.     In connection with the conduct described herein, Defendants acted knowingly and/or recklessly.  Among other things, Defendants knew or were

22

reckless in not knowing that they were making material misrepresentations and omitting material facts in connection with selling or offering of securities.

71.     Smith and the Entity Defendants had ultimate authority for their false and misleading statements and omissions made orally and in documents provided to clients and prospective clients.

72.     Defendants knowingly and/or recklessly disseminated false and misleading statements to investors and prospective investors with the intent to deceive.

73.     Through their material misrepresentations and omissions, Defendants knowingly, recklessly, or negligently obtained money or property from investors.

74.     Through this scheme, Defendants knowingly and/or recklessly engaged in acts, transactions or courses of business that operated as a fraud or deceit upon their investors and client.

75.     Smith and Bristol acted as investment advisers during the relevant period by providing investment advisory services for a fee.

76.     Smith and Bristol provided investment advisory services to a pooled investment vehicle, the Fund.

77.     In connection with the conduct described herein, Smith and Bristol breached the fiduciary duty they owed to the Fund.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Against All Defendants)

78.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 77, above, as if the same were fully set forth herein.

79.     From at least February 2016 through the present, as a result of the conduct alleged herein, Defendants knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a.     employed devices, schemes or artifices to defraud;

    b.     obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were

24

made, not misleading; or

        c.     engaged in acts, transactions, practices, or courses of business

that operated as a fraud or deceit upon offerees, purchasers, and prospective

purchasers of securities.

      80.    By engaging in the foregoing conduct, Defendants violated, and

unless restrained and enjoined will continue to violate, Section 17(a) of the

Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**
**(Against All Defendants)**

      81.    The Commission re-alleges and incorporates by reference each and

every allegation in paragraphs 1 through 77 inclusive, as if they were fully set forth

herein.

      82.    By engaging in the conduct described above, from February 2016 to

the present, Defendants directly or indirectly, by use of the means or instruments of

interstate commerce or of the mails, or the facility of a national securities

exchanges, in connection with the purchase and sale of securities described herein,

knowingly or recklessly:

        a.     employed devices, schemes, or artifices to defraud;

25

      b.     made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.     engaged in acts, practices, and courses of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

83.    Defendants knowingly, intentionally, or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  By engaging in such conduct, Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severely reckless disregard for the truth.

84.    By reason of the foregoing, Defendants, directly and indirectly, violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
## Violations of Section 206(1) and (2) of the Advisers Act
## (Against Defendants Smith and Bristol)

85.     The Commission realleges and incorporates by reference each and

every allegation in paragraphs 1 through 77, above, as if the same were fully set

forth herein.

86.     From at least February 2016 through the present, as a result of the

conduct alleged herein, Defendants Smith and Bristol, knowingly or recklessly or,

with respect to subpart b below, negligently, as investment advisers, directly or

indirectly, by use of the means or instrumentality of interstate commerce or of the

mails:

         a.     employed devices, schemes or artifices to defraud any client or

prospective client;

         b.     engaged in transactions, practices, or courses of business which

operated or would operate as a fraud or deceit upon any client or prospective client.

87.     By engaging in the foregoing conduct, Defendants Smith and Bristol

violated, and unless restrained and enjoined will continue to violate, Sections

206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1), (2)].

## FOURTH CLAIM FOR RELIEF
### Violations of Section 206(4) of the Advisers Act and Rule 206-4 thereunder
### (Against Smith and Bristol)

88.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 77, above, as if the same were fully set forth herein.

89.     Defendants Smith and Bristol, by engaging in the conduct described above, directly or indirectly, by use of means or instrumentalities of interstate commerce or use of the mails, which acting as investment advisors, engaged in acts, practices, or courses of business that were fraudulent, deceptive, and manipulative.

90.     Defendants Smith and Bristol, while acting as investment advisers to pooled investment vehicles:  (a) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

91.     By reason of the foregoing, Defendants Smith and Bristol violated and, unless restrained and enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

## I.

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and permanently restraining and enjoining Smith and Bristol from violating Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. § 80b-6] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

## II.

Ordering disgorgement by Defendants of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws;

29

## III.

Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and, as to Defendants Smith and Bristol, pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

## IV.

Granting such other and further relief as this Court may determine to be just and necessary.

# JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff

demands that this case be tried to a jury.


Respectfully submitted,

By: /s/ John V. Donnelly III

Kelly L. Gibson
Scott A. Thompson
John V. Donnelly III
Mark R. Sylvester

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740
Email:  DonnellyJ@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

Dated: August 27, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | |
| v. | **DESIGNATION OF AGENT FOR SERVICE** |
| BRENDA A. SMITH, et al., | |
| Defendants. | |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action.  Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Civil Division, United States Attorney's Office for the District of New Jersey, 970 Broad Street, 7th Floor,

32

Newark, NJ 07102 shall constitute service upon the Commission for purposes of

this action.

Respectfully submitted,

s/ Scott A. Thompson
Scott A. Thompson

Attorneys for Plaintiff
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
(215) 597-3100
ThompsonS@sec.gov